# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE WINGO, | |
| Plaintiff-, | NO. 3:17-CV-00846 |
| v. | (JUDGE CAPUTO) |
| TROVER SOLUTIONS, INC., | |
| Defendant-. | |

## MEMORANDUM

Presently before me is Plaintiff Denise Wingo's ("Wingo") Motion to Remand this Action to State Court. (Doc. 10.) Because § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, provides subject matter jurisdiction over this action, Wingo's motion to remand will be denied.

## I. Background

The events leading to this action began when Wingo was injured in a car accident and received short term disability benefits totaling $14,189.28 under a Group Disability Plan issued by Metlife (the "Plan").[1] (Doc. 1, Ex. 1, ¶¶ 6, 8, 10.) Wingo also brought suit against the tortfeasor, resulting in a settlement which included compensation for the personal injuries she sustained in the accident. (Doc. 1, Ex. 1, ¶¶ 11-12.) Trover Solutions, Inc. ("Trover"),[2] which contracts with Metlife to provide recovery services, contacted Wingo on January 27, 2016, asserting recovery rights against the proceeds of Wingo's personal injury recovery for the disability benefits paid to her. (Doc. 1, Ex. 1, Ex. B.) In response, Wingo asserted through her counsel

---

[1] The parties do not dispute that the Plan is a fully-insured "employee welfare benefit plan" within the scope of ERISA, and Wingo qualifies as a "participant" of the Plan under ERISA. *See* ERISA §§ 3(1), 3(7), 4(a), 29 U.S.C. §§ 1002(1), 1002(7), 1003(a).

[2] The Court takes notice of Trover's statement in its Notice of Removal that Equian, LLC is now the surviving company after a merger with Trover. The Court will refer here to "Trover" to avoid confusion.

on April 27, 2016, that Trover's request violated its own policy and asked Trover to confirm in writing that it was waiving its entire subrogation interest in the matter. (Doc. 1, Ex. 1, Ex. C.) Trover confirmed the next day that it had closed its claim and was no longer pursuing recovery. (Doc. 1, Ex. 1, Ex. D.) Wingo never paid any money to Trover. (Doc. 1, Ex. 1, ¶¶ 28, 32-33.)

Wingo originally filed this action in the Court of Common Pleas of Pike County, Pennsylvania on or about March 29, 2017. (Doc. 1, Ex. 1.) In her Complaint, Wingo alleges claims against Trover for violations of the Pennsylvania Motor Vehicle Financial Responsibility Law § 1720 ("MVFRL"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEUA"), as well as attempted theft. (Doc. 1, Ex. 1, ¶¶ 36-67.) As a result, Wingo requests "a declaration that [] Trover has no right for recovery of reimbursement of disability benefits paid from the proceeds" of the relevant settlement for the purpose of "clarifying and settling the legal relations at issue between the parties." (Doc. 1, Ex. 1, ¶¶ 46, 50.)

On May 12, 2017, Trover removed the action to this Court. (Doc. 1.) Trover contends that federal subject matter jurisdiction over this action exists pursuant to § 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B), because Wingo seeks a judgment interpreting the rights of the parties under an ERISA-regulated welfare benefit plan. (Doc. 1, ¶¶ 7, 10.)

On May 31, 2017, Wingo filed the instant motion to remand the action to the Court of Common Pleas of Pike County. (Doc. 10.) Trover filed a brief in opposition on June 14, 2017 (Doc. 12), and Wingo filed a reply brief in further support of her motion on June 23, 2017. (Doc. 13.) Thus, the motion to remand is fully briefed and ripe for disposition.

## II. Discussion

**A.     Legal Standard**

28 U.S.C. § 1441(a) provides that any civil action brought in state court of

which the federal district courts have original jurisdiction may be removed by the defendant to the appropriate federal district court. One category of cases of which district courts have original jurisdiction is "[f]ederal question" cases: cases arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. An action must be remanded if "it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). On a motion to remand, the removing party bears the burden of establishing the propriety of removal. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085, 111 S. Ct. 959, 112 L. Ed. 2d 1046 (1991). Furthermore, "removal statutes are to be strictly construed against removal and all doubts resolved in favor of remand." *Id.* In determining whether remand based on improper removal is appropriate, the Court "must focus on the plaintiff's complaint at the time the petition for removal was filed," and assume all factual allegations therein are true. *Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

Under the "well-pleaded complaint" rule, federal question jurisdiction generally exists only when an issue of federal law appears on the face of the plaintiff's complaint." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F. 3d 266, 271 (3d Cir. 2001). However, when a defendant claims removal is proper based on complete preemption, "a federal court may look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Id.* at 274 (internal quotation marks omitted). A plaintiff may not avoid removal to federal court "by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of State of Cal. V. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 22 (1983).

**B.  Analysis**

Wingo argues that remand is necessary in this case because the action does not present issues of federal law and does not involve diversity of citizenship. Trover insists that federal subject matter jurisdiction exists pursuant to § 502(a) of ERISA,

3

which provides that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The jurisdictional subsection of ERISA's civil enforcement provisions provides: "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f).

A federal court has original jurisdiction where Congress has "so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). "Certain federal laws, [] including ERISA, so sweepingly occupy a field of regulatory interest that any claim brought within that field, however stated in the complaint, is in essence a federal claim. In such cases, the doctrine of complete preemption provides federal jurisdiction and allows removal to federal court." *Levine v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005). In particular, § 502(a)(1)(B) of ERISA "is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim." *Aetna Health Inc. V. Davila*, 542 U.S. 200, 209 (2004) (internal quotations removed). *See also Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 307 (3d Cir. 2006) ("[ERISA is a] federal law[] [that] so thoroughly occup[ies] a field of regulatory interest that any claim brought within the field, however stated in the complaint, constitutes a federal claim and therefore bestows a federal court with jurisdiction.")

The Third Circuit has set forth two conditions, both of which must be met, for a claim to be completely preempted under ERISA § 502(a) and therefore subject to removal:

1. That the plaintiff could have brought the claim under ERISA's civil

4

enforcement scheme in § 502(a), and

2. that there is no other legal duty independent of ERISA or the plan terms that is implicated by a defendant's actions.

*Davila*, 542 U.S. at 210; *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). This Court will examine each factor in turn.

### *1. Wingo Could Have Brought Her Claim under ERISA §502(a)*

Wingo claims that she could not have brought the instant case through ERISA's civil enforcement scheme under §502(a), because (1) she is not bringing a claim for benefits due since she has already received her full benefits under the plan; (2) Trover has withdrawn its subrogation claims, so there is no suit to determine Trover's rights to subrogation under th e Plan; (3) Wingo is asserting violations of state law, for which there are no parallel claims under ERISA; and (4) Wingo's state law claims against Trover are not predicated on an ERISA plan. (Doc. 13, p. 5-7.) However, Wingo fails to show that she could not have brought her suit under § 502(a).

At bottom, Wingo's various state law claims amount to the assertion that Trover wrongfully sought reimbursement under the Plan. Where a plaintiff claims her ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for "benefits due" and federal jurisdiction under § 502(a) is appropriate. *Levine*, 402 F.3d at 163; *Wirth*, 469 F.3d at 309. Wingo is unsuccessful in her attempt to distinguish *Levine* and *Wirth* on the basis that in those cases "the insurers' very right to subrogation under the Plan was contested and in issue." (Doc. 13, p. 12.) Here, as in both *Levine* and *Wirth,* the right of Trover to subrogation is also in issue: Wingo seeks a declaration that Trover "has no right" to subrogation of any proceeds of her tort action. (Doc. 1, Ex. 1, ¶¶ 39-52.)

Further, in *Levine*, the Third Circuit adopted the Fifth Circuit's reasoning in

5

*Arana v. Ochsner Health Plan*, which held that a plaintiff's suit seeking a declaratory judgment prohibiting subrogation was preempted by § 502(a)(1)(B), even where the plaintiff had not paid any money to the insurer. 338 F.3d 433 (5th Cir. 2003). The Court reasoned that:

> "As it stands, Arana's benefits are under something of a cloud, for OHP is asserting a right to be reimbursed for the benefits it has paid for his account. It could be said, then, that although the benefits have already been paid, Arana has not fully 'recovered' them because he has not obtained the benefits free and clear of OHP's claims. Alternatively, one could say that Arana seeks to enforce his rights under the terms of the plan, for he seeks to determine his entitlement to retain the benefits based on the terms of the plan."

*Id.* at 438. Although Wingo notes that, unlike the insurer in *Arana*, Trover is not currently making a claim for subrogation, Wingo's benefits are still under the same sort of "cloud" described by the *Arana* Court. This is evident from Wingo's Complaint, which asserts that:

> Although Defendant has currently withdrawn its demand for subrogation as to Denise Wingo, Trover's subrogation demands are still ongoing, Wingo is still covered by the policy by which Trover has already demanded illegal subrogation, Wingo's existing injuries may render her disabled again and thus subject to illegal subrogation demands again, and Wingo may suffer injury in future [sic] which could disable her again and thus subject her to illegal subrogation demands again."

(Doc. 1, Ex. 1, ¶ 52.) So, by Wingo's own pleading, she does not hold her benefits under the Plan "free and clear" of Trover's claims. Her request for a declaratory judgment is a request that the court "clarify[] and settl[e] the legal relations at issue between the parties," which is a remedy available under § 502(a). (Doc. 1, Ex. 1, ¶ 51.) *See Davila*, 542 U.S. at 210 (explaining that a "participant or beneficiary can [] bring a suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits.")

Wingo asserts that because her claims are for violations of state statutes, she could not have brought this case under § 502(a) because ERISA does not provide relief for illegal collection activity. This misses the point: the reason for preemption is not that Wingo could bring the exact same claims under the relevant federal law, but that in passing ERISA Congress intended to provide the exclusive remedy for the alleged violation in question:

> "[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."

*Davila*, 542 U.S. at 208-209 *(quoting Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). Further, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209. Although Wingo may not be able to bring a claim for, *e.g.*, illegal collection practices under § 502(a), she has available the remedy of bringing suit "generically to 'enforce [her] rights' under the plan, or to clarify any of [her] rights to future benefits." *See Davila*, 542 U.S. at 210*; see also Pilot Life*, 481 U.S. at 53 ("Relief [under § 502(a)] may take the form of [] a declaratory judgment on entitlement to benefits."). This is precisely what Wingo, through counsel, initially did in her response to Trover's claim for subrogation: she pointed out that Trover's actions contravened the terms of the Plan and Trover was therefore not entitled to subrogation for her collateral recovery. (Doc. 1, Ex. 1, Ex. C.) Her current assertion that she could not do the same thing in this Court is not plausible.

### *2. There is no Independent Legal Duty Implicated by Trover's Actions.*

The second prong of *Davila* requires that there is no legal duty independent of ERISA or the plan terms that is implicated by a defendant's actions. *Davila,* 542 U.S. at 210. A legal duty is "independent" if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *New Jersey Carpenters and the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014). Where a defendant's duties under a state law are identical to those under an ERISA policy, there is no independent legal duty. *See DeVito v. Aetna, Inc.*, 536 F.Supp.2d 523, 530 (D.N.J. 2008). Further, under the second prong of the test, courts must also examine whether interpretation or application of the terms and scope of the ERISA insurance plan form an "essential part" of Plaintiff's claims. *See Pascack Valley*, 388 F.3d at 402.

In general, courts have found the existence or non-existence of a separate contractual relationship between the parties outside of the one created by an ERISA plan to be persuasive regarding whether an independent legal duty exists. *See, e.g., Davila*, 542 U.S. at 211 (finding no independent duty and noting the only relationship between each plaintiff and his or her provider was the plaintiff's ERISA-regulated benefit plan); *Pascack Valley*, 388 F.3d at 402-403 (finding an independent legal duty where resolution of the suit required interpretation of a separate Subscriber Agreement and not the ERISA plan in question); *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, 2017 WL 751851, at *8-11 & n. 6 (D.N.J. Feb. 27, 2017) (finding an independent legal duty where defendant allegedly preauthorized certain medical procedures and made an oral promise to pay the plaintiffs' "usual, customary, and reasonable amount"); *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, 2011 WL 4737067, at *5-7 (D.N.J. June 30, 2011) (finding no independent legal duty where "[b]ecause no separate contract governs plaintiff's right to payment, plaintiff's [state law] claims are inextricably intertwined with the interpretation and application of ERISA plan coverage and benefits.").

Independent legal duties can also be created by statute. In *New Jersey Carpenters*, the Third Circuit found an independent legal duty where workers covered by an ERISA plan sued for unpaid fringe benefits under a state law mandating that laborers on certain "public works" projects be paid a prevailing wage. In so finding, the Court stated that a state law duty's "independence is best understood by looking to [] what the plaintiffs must prove to prevail." 760 F. 3d at 304. Since the Court needed only to compare what the plaintiffs were paid to the amount they were owed under the wage statute, without reference to the plaintiffs' benefit plan, the Court concluded that the legal duty created by the state statute was independent of the duty created by the ERISA benefits plan.

Here, Wingo argues that each of the state law statutes under which she brings suit creates an independent legal duty. However, like the plaintiffs in *Davila*, the only relationship between Wingo and Trover is the one created by Wingo's participation in the Plan. Further, each alleged violation of state law depends on one underlying action by Trover: attempting to assert subrogation rights over Wingo's tort recovery. Wingo's suit is essentially a claim for benefits due under the Plan, since it seeks to clarify that Trover has no right to subrogation and Wingo can hold her benefits free and clear. Wingo is only entitled to these benefits because of her participation in the Plan. Trover's duty to provide her these benefits free and clear of subrogation claims under the Plan is identical to the duty created by the MVFRL: to provide benefits without seeking reimbursement from proceeds of tort claims. Since the other three alleged violations stem from Trover's duty under the MVFRL,³ Trover's duty is identical under these claims as well. Therefore, none of the statutes creates a legal duty

---

³I.e., in order for Wingo to prove Trover violated the UTPCPL, PFCEUA, and attempted theft law, she must show that Trover engaged in deceit or misrepresentation, or failed to correct a misunderstanding. In order for this to be true, it must be true that Trover was not entitled to subrogation for the benefits in question, which depends on whether the MVFRL applies to the Plan.

independent of the one created between the parties under the Plan. *See DeVito* at 530.

Further, in order to evaluate Wingo's state law claims it is necessary to examine the Plan. The MVFRL provides that "there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to [] benefits paid or payable by a program, group contract or other arrangement." 75 Pa.C.S.A. § 1720. In order to determine whether Trover violated the MVFRL by making its claim for subrogation, a court must first determine whether the Plan is included in the types of benefits listed in the statute. This is because if the Plan was of a type not covered by the statute, then Trover would be entitled to assert a claim for subrogation unless this contravened its own policy. *See, e.g., Wirth*, 469 F.3d at 309-310 (noting that the language in § 1720 of the MVFRL is not specific as to which types of plans are covered and analyzing whether it applies to HMOs).

Finally, here, as in *Davila*, "liability would exist [] only because of [Trover's] administration of ERISA-regulated benefit plans." Wingo's argument that her claims would be the same regardless of what plan she had is beside the point. The plaintiffs in *Davila* could also have brought their state law claims regardless of whether they had an ERISA-regulated plan or not, but the operative fact according to the Court was that the plaintiffs' claims could not be evaluated without assessing the plan in question, which happened to be an ERISA-regulated plan. *See Davila* at 211-213.

Thus, Trover properly removed the action to this Court pursuant to § 502(a) of ERISA.

### III. Conclusion

For the above stated reasons, Wingo's motion to remand will be denied.

An appropriate order follows.

December 1, 2017　　　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　United States District Judge

10